UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| STACY MARIE S., | ) | No. CV 20-4737 AGR |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| ANDREW SAUL, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Plaintiff[1] filed this action on May 27, 2020. The parties have filed a Joint Stipulation that addressed the disputed issues. The court has taken the matter under submission without oral argument.[2]

Having reviewed the entire file, the court affirms the decision of the Commissioner.

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge.  (Dkt. Nos. 10, 12.)

I.

**PROCEDURAL BACKGROUND**

Plaintiff filed an application for supplemental security income benefits on April 11, 2017, and alleged an onset date of January 1, 2012. Administrative Record ("AR") 16. The application was denied. AR 16, 111. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On March 7, 2019, the ALJ conducted a hearing at which Plaintiff and a vocational expert ("VE") testified. AR 49-71. Plaintiff amended the alleged onset date to April 11, 2017. AR 16, 53. On April 11, 2019, the ALJ issued a decision denying benefits. AR 13-26. On April 2, 2020, the Appeals Council denied review. AR 1-6. This action followed.

II.

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

2

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (citation and quotation marks omitted).

### B. The ALJ's Findings

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[3] the ALJ found that Plaintiff had the severe impairments of bipolar disorder with psychotic features and pseudoseizures. AR 20.

The ALJ found that Plaintiff had the residual functional capacity to perform work with the following restrictions: Plaintiff is limited to simple and routine tasks with occasional interactions with coworkers and supervisors. Plaintiff is precluded from interactions involving negotiation, confrontation or team efforts, and working with the general public. She can never climb ladders, ropes or scaffolds, and must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. She must avoid even moderate exposure to unprotected heights and dangerous moving machinery. AR 22.

---

[3] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

1    The ALJ found that Plaintiff had no past relevant work but could perform jobs that
2 exist in significant numbers in the national economy, such as hand packager, laundry
3 worker II, and kitchen helper.  AR 24-25.

4    **C.    Subjective Allegations**

5    In assessing a claimant's subjective allegations, the ALJ conducts a two-step
6 analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ
7 determines whether the claimant presented objective medical evidence of an
8 impairment that could reasonably be expected to produce the symptoms alleged.  *Id.*
9 The ALJ found that Plaintiff's medically determinable impairments could reasonably be
10 expected to cause some of the alleged symptoms.  AR 23.

11   Second, when, as here, the record does not contain evidence of malingering, the
12 ALJ must give specific, clear and convincing reasons for discounting the claimant's
13 subjective allegations.  *Vasquez*, 572 F.3d at 591.  The ALJ found that Plaintiff's
14 statements concerning the intensity, persistence, and limiting effects of her symptoms
15 were not entirely consistent with the objective medical evidence and other evidence in
16 the record.  AR 23.  An ALJ may not rely exclusively on a lack of objective medical
17 evidence supporting the severity of the alleged symptoms to discount Plaintiff's
18 subjective allegations.  *See Rollins* v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).
19 However, "[c]ontradiction with the medical record is a sufficient basis for rejecting the
20 claimant's subjective testimony."  *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir.
21 2008) (distinguishing treatment of excess symptom testimony).

22   The ALJ found Plaintiff's subjective statements to be exaggerated when viewed in
23 light of the objective evidence, the lack of treatment for the severity of her alleged
24 symptoms and her noncompliance with treatment that was recommended.  AR 23-24.

25   On April 11, 2017, the amended onset date, Plaintiff's mental health care was
26 transferred to the Covina Clinic.  Her chart indicated a diagnosis of bipolar disorder with
27 psychotic features and a history of polysubstance dependence.  AR 310; *see* AR 368.
28 As the ALJ noted, on August 16, 2016, Plaintiff had reported that she was compliant

4

with medications and denied side effects.  The medications helped modify her symptoms and she was able to accomplish much more.  AR 24, 322.  By contrast, she stopped taking her medications before her next visit on October 4, 2016, and complained of daily seizures, inability to sleep, and uncontrollable anger and panic attacks.  AR 24, 319.  She missed appointments until she came in for her medical records after being denied SSI benefits.  AR 24, 314, 315, 316, 317, 318.

On April 11, 2017, Plaintiff reported that her symptoms of audio and visual hallucinations, paranoia, insomnia and mania had resolved and remained well controlled with medications.  She continued, however, to feel angry, sad and anxious.  She reported having seizures every day.  AR 310.  On mental status examination, Plaintiff was noted to be well groomed and appropriately dressed.  She was cooperative and had good eye contact.  Her speech was within normal limits.  Her mood was irritable, anxious and angry.  Her thought process was logical and goal directed.  Her insight, judgment and impulse control were fair.  There was no evidence of hallucination or delusion.  Her medications were modified.  AR 310-11.  Walking was her form of exercise.  AR 309.

Two days later, on April 13, Plaintiff requested that a survey be sent to her lawyer and said she was applying for SSI.  She was calm and focused.  Plaintiff said the person with whom she lived had been physical with her but she did not want to report it.  She admitted to audio and visual hallucinations, paranoia and anxiety.  She reported avoiding others and self isolating, and said that working with anxiety, irritability, fear of others and low frustration tolerance would be very difficult.  AR 308.  On April 18, Plaintiff's new therapist contact Dr. O'Day, who explained the previous denials of disability benefits and agreed to forward the previous assessments of Plaintiff.  AR 306.

On May 15, 2017, Plaintiff was given an Adult Initial Assessment for SSI appeal purposes.  AR 304, 370-80.  She had been sober for four years.  AR 375.  She continued to meet the criteria for bipolar disorder with psychotic features, and exhibited a significant impairment in life functioning.  It was expected that the proposed

interventions would impact her condition. AR 380. Plaintiff did not show up to her next appointment. AR 306. On May 31, 2017, Plaintiff reported that her daily seizures were not responding to medications. She was referred to an epileptologist. AR 290.

The ALJ discounted Plaintiff's testimony regarding daily seizures, difficulty breathing from sleep apnea occurring almost all day and resulting in panic attacks almost all of the time, daily migraines, and difficulty with memory. The ALJ correctly noted that Plaintiff did not seek or receive treatment thereafter from an epileptologist prior to the date of the ALJ's decision on April 11, 2019, close to two years later, and was not on seizure medications. Plaintiff ceased attending mental health treatment. AR 24-25. The ALJ reasonably inferred that the symptoms were not as severe as alleged, and that the residual functional capacity assessment adequately took into account Plaintiff's limitations. AR. 24; *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (noting ALJ may consider unexplained or inadequately explained failure to seek treatment or follow treatment). Plaintiff testified that the reason for delay was insurance and then doctor availability. AR 60. However, Plaintiff's mental health treatment was with the Los Angeles County Department of Mental Health in 2017 and, as the ALJ noted, Plaintiff did not show up to her scheduled appointment. AR 24-25, 303-04. There is a significant gap in the medical records. Plaintiff did have Medi-Cal insurance and did see medical providers in 2018 for other conditions. Plaintiff has not shown error.[4]

---

[4] The court notes that, according to records later submitted to the Appeals Council, Plaintiff went to a neurology consult after the date of the ALJ's decision. AR 550. Plaintiff reported seizures each week. The neurologist ordered an MRI of the brain, basic labs, and an EEG both awake and asleep. The neurologist recommended that Plaintiff explore a psychiatric basis for psychogenic seizures. AR 550-51. The Appeals Council did not exhibit this evidence and advised that Plaintiff would need to file an application for benefits after the date of the ALJ's decision. AR 2. Plaintiff apparently filed such an application. AR 503. The court expresses no view as to the merits of that application or the onset date. *See Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

D. **Step Five of the Sequential Analysis**

At step five of the sequential analysis, the burden shifts to the ALJ to identify jobs that existed in significant numbers in the national economy that the claimant could perform. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998); 20 C.F.R. § 416.920. In meeting this burden, the ALJ relies primarily on the DOT for information about the requirements of work in the national economy. Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000); *see also Pinto v. Massanari*, 249 F.3d 840, 845-46 (9th Cir. 2001).

"There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2" (the "grids"). *Lounsburry*, 468 F.3d at 1114. The grids are inapplicable when "a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations."[5] *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (citation and quotation marks omitted). The testimony of a vocational expert is required when nonexertional limitations significantly limit the range of work a claimant can perform. *Tackett*, 180 F.3d at 1102.

The ALJ may rely on the testimony of a vocational expert, who can assess the claimant's limitations and identify any existing jobs that the claimant can perform. *Tackett*, 180 F.3d at 1100-01. Plaintiff contends that the ALJ erred because the residual functional capacity assessment precludes Plaintiff from work requiring team effort and is therefore inconsistent with the representative jobs of hand packager, laundry worker II, or kitchen helper. The ALJ's hypothetical to the vocational expert ("VE") contained the restriction to work that did not involve team effort. AR 68. The VE

---

[5] Nonexertional limitations include "postural and manipulative limitations such as difficulty reaching, handling, stooping, climbing, crawling, or crouching." *Lounsburry*, 468 F.3d at 1115.

identified three representative jobs and explained that the Dictionary of Occupational Titles ("DOT") is silent on the extent to which a person relates to coworkers. Therefore, the VE's testimony in that regard was based upon his experience as a vocational rehabilitation counselor. The VE testified that his testimony in all other respects was consistent with the DOT. AR 68-69. Plaintiff did not challenge the VE's credentials or expertise. AR 67, 69.

Plaintiff cites O*NET, a database of occupational requirements. None of this material was presented to the ALJ or the Appeals Council. *Gonzalez v. Saul*, 833 Fed. Appx. 464, 465 (9th Cir. 2021) (noting forfeiture of argument not raised by represented claimant before ALJ or Appeals Council); *Shaibi v. Berryhill*, 833 F.3d 1102, 1109-10 (9th Cir. 2017) (noting ALJ did not have *sua sponte* duty to consider O*NET data). Absent any foundation, the court is reluctant to rely on or interpret the import of the O*NET database on the issues in this case. Moreover, Plaintiff's interpretation of O*NET does not necessarily mean that the ALJ's decision is unsupported by substantial evidence. *Terry v. Saul*, 2021 U.S. App. LEXIS 16069, *7 (9th Cir. May 28, 2021) (claimant's reliance on O*NET "does not necessarily establish either legal error or a lack of substantial evidence to support the ALJ's disability determination"). Rather, the ALJ was entitled to rely on the VE's unchallenged expertise as a vocational rehabilitation counselor and reference to the DOT. The VE's testimony constitutes substantial evidence in support of the ALJ's finding. *Id.* Plaintiff has not shown error.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

DATED: June 11, 2021

ALICIA G. ROSENBERG
United States Magistrate Judge